In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Donald A. HAHNFELD, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Donald A. HAHNFELD, Respondent.

Supreme Court

*No. 2006AP1549–D. Decided October 4, 2007.*

2007 WI 123

(Also reported in 739 N.W.2d 280.)

¶ 1. PER CURIAM. We review a referee's report and recommendation concluding that Attorney Donald A. Hahnfeld engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for a period of 60 days. The referee also recommended that Attorney Hahnfeld undergo an alcohol and other drug abuse (AODA)/psychological evaluation and that the reinstatement of his license to practice law should be conditioned upon a satisfactory AODA/psychological evaluation.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We further determine that the seriousness of Attorney Hahnfeld's misconduct warrants the suspension of his

license to practice law for 60 days. We also agree with the referee's recommendation that Attorney Hahnfeld undergo an AODA/psychological evaluation and that reinstatement of his license should be conditioned upon a satisfactory evaluation. We further conclude that the costs of the proceeding, which are $3,957.08 as of May 24, 2007, should be assessed against him.

¶ 3. Attorney Donald Hahnfeld was admitted to practice law in Wisconsin in 1987 and practices in Brookfield.

¶ 4. In 1993 Attorney Hahnfeld was publicly reprimanded for neglecting four divorce matters and a bankruptcy case. In 2003 he was again publicly reprimanded, this time for a conflict of interest and filing a retaliatory defamation lawsuit which served only to maliciously injure the attorney who brought Attorney Hahnfeld's conflict to the court's attention.

¶ 5. On June 28, 2006, the Office of Lawyer Regulation (OLR) filed a complaint alleging 11 counts of misconduct with respect to Attorney Hahnfeld's handling of three client matters. The first four counts in the complaint concerned Attorney Hahnfeld's representation of K.C. K.C. hired Attorney Margaret O'Connor, an associate in Attorney Hahnfeld's firm, to represent him in a dispute with his former business partner, a post-judgment divorce issue, and a small claims matter. O'Connor filed a contempt motion on behalf of K.C. in the divorce case. Pending resolution of the motion, the parties stipulated to placing $20,000 from the sale of their homestead into the trust account of Hahnfeld & Schneck. The funds were deposited on November 18, 2002.

¶ 6. On May 16, 2003, a contempt motion hearing was held in the family branch of Washington County circuit court. The court ordered a $556.20 payout to

K.C. from the homestead sale proceeds being held in trust and ordered O'Connor to prepare an order following the hearing. On May 20, 2003, the law firm disbursed $2,500 from the trust fund as a payment of fees incurred by K.C. in the small claims case. K.C. had not been billed for such services and the withdrawal from funds held in trust was without K.C.'s knowledge or permission.

¶ 7. O'Connor left the law firm around June 9, 2003, and performed no other work in the K.C. matter and had no further contact with Attorney Hahnfeld. O'Connor's contract with the law firm was terminated effective July 1, 2003. Attorney Hahnfeld took over O'Connor's cases, including the responsibility for drafting the K.C. order resulting from the May 16 hearing in family court. In July 2003 Attorney Hahnfeld wrote to K.C. advising that preparation of the order was "in process" and also advising that $10,000 would be available to him in the next seven to ten days.

¶ 8. On July 16, 2003, Attorney Hahnfeld's firm disbursed $7,500 to K.C. and $9,000 to the opposing counsel's trust account. Attorney Hahnfeld advised K.C. that the firm had disbursed $9,000 to opposing counsel and that the balance of $1,000 would be disbursed within ten days of the entry of the order that Attorney Hahnfeld was drafting.

¶ 9. Throughout the summer and fall of 2003, K.C. made repeated attempts to contact Attorney Hahnfeld on numerous occasions, but received no response. In September 2003 opposing counsel in the divorce, Kristen Halliden, wrote to Attorney Hahnfeld indicating she had not received information she had requested about bills or debts paid by K.C. and demanding that Attorney Hahnfeld release the remaining funds held in his trust account. Attorney Halliden contacted Attor-

ney Hahnfeld on October 29, 2003, and the two discussed the contents of the family court commissioner's order. Attorney Hahnfeld indicated that he would submit the order for Attorney Halliden's review by November 5, 2003.

¶ 10. In April 2004 Attorney Halliden filed a contempt motion on behalf of K.C.'s ex-wife. K.C. hired another attorney to represent him. On May 21, 2004, the Washington County family court commissioner ruled that he had already addressed the issues brought before him on May 16, 2003, and he advised counsel he would not render another order. On June 23, 2005, Attorney Hahnfeld forwarded a letter to the new attorneys for the parties in the divorce matter advising that he would deposit trust funds with the clerk of court. Both counsel advised Attorney Hahnfeld to cut checks to them in specific amounts, which Attorney Hahnfeld did on or about June 29, 2005.

¶ 11. As of August 12, 2005, Attorney Hahnfeld had not drafted the family court commissioner's order and took the position he would draft the order only if K.C. paid for the transcript of the May 16, 2003, hearing.

¶ 12. K.C. filed a grievance with the OLR. The OLR forwarded the grievance to Attorney Hahnfeld to obtain his response. Attorney Hahnfeld failed to respond by the required response deadline, and did not contact the OLR to request additional time to respond. Attorney Hahnfeld also failed to respond in any way to the OLR's second notice that a written response was required, and he did not respond to the K.C. grievance until after he was personally served with a third notice.

¶ 13. The second client matter set forth in the OLR's complaint involved Attorney Hahnfeld's representation of S.E., who hired Attorney Hahnfeld on

March 20, 2003, to file a divorce action on her behalf. S.E. paid Attorney Hahnfeld a retainer of $2,500. Attorney Hahnfeld did not advise S.E. on what basis she would be charged for legal services, and he did not establish with S.E. an agreement as to his hourly rate or how much the divorce would cost.

¶ 14. Attorney Hahnfeld filed a summons and petition with child support award in Waukesha County circuit court on March 20, 2003. A trial was held on May 11, 2004. On May 12, 2004, Attorney Hahnfeld wrote to S.E. regarding some of the divorce issues. Attorney Hahnfeld estimated S.E.'s fees to be $6,500 more than the original retainer S.E. had paid. He described additional work that would need to be done and advised S.E. to expect a bill between $11,000 and $12,000.

¶ 15. That same day Attorney Hahnfeld wrote to S.E.'s bank about refinancing her home. Attorney Hahnfeld indicated he had ordered a transcript of the proceeding and would be preparing the judgment of divorce based on that transcript. On May 13, 2004, Attorney Hahnfeld wrote to opposing counsel in the divorce matter and said he had begun drafting the findings of fact, conclusions of law and judgment. He also said he was awaiting a transcript.

¶ 16. During the pendency of the divorce case, Attorney Hahnfeld did not bill S.E. on a periodic basis because he felt S.E. was sensitive about the costs that were being incurred. During a meeting between Attorney Hahnfeld and S.E., Attorney Hahnfeld estimated that the likely fees for the divorce would be $3,000 to $3,500 above the $2,500 S.E. had already paid, and that the cost of the trial would be $5,000 on top of that amount, resulting in expected total compensation be-

tween $8,000 and $8,500 over the original $2,500 retainer. Attorney Hahnfeld never advised S.E. as to his hourly rate.

¶ 17. On or about June 18, 2004, S.E. terminated Attorney Hahnfeld's representation. By letter dated June 24, 2004, S.E. requested that Attorney Hahnfeld forward her complete file to her. Attorney Hahnfeld failed to comply with S.E.'s request for her file until November of 2004 when he responded to the OLR's grievance investigation. Attorney Hahnfeld did not provide S.E. with a written, itemized bill until November 2004. The total amount charged was $25,822.50, far in excess of Attorney Hahnfeld's previous estimates.

¶ 18. After S.E. filed a grievance against Attorney Hahnfeld, the OLR forwarded it to Attorney Hahnfeld requesting his formal written response by October 18, 2004. Attorney Hahnfeld failed to respond by that deadline, and he did not contact the OLR to request additional time to respond. Attorney Hahnfeld also failed to timely respond to the OLR's second notice that his written response to S.E.'s grievance was required, and he did not respond to the grievance until after he was personally served with a third notice that his response was required.

¶ 19. The third client matter detailed in the OLR's complaint involved Attorney Hahnfeld's representation of R.T. R.T. hired Attorney Hahnfeld in July of 2004 to represent him in a paternity matter wherein R.T. sought a change in a visitation order. R.T. paid Attorney Hahnfeld $750, which Attorney Hahnfeld deposited in his general operating account upon receipt. The hearing on R.T.'s motion for a change in the visitation order was scheduled for August 2, 2004. Because of a scheduling conflict, Attorney Hahnfeld rescheduled the hearing to September 30, 2004. R.T.

appeared at the September 30 hearing date, but Attorney Hahnfeld did not appear. R.T. called Attorney Hahnfeld's office prior to the hearing. The phone was answered by an automated system, and R.T. left a message. R.T. continued to call Attorney Hahnfeld's office until the start of the hearing. He never reached Attorney Hahnfeld and proceeded to the hearing without him.

¶ 20. The day after the hearing, R.T. called Attorney Hahnfeld for an explanation of Attorney Hahnfeld's failure to appear at the hearing. R.T. again was unable to reach Attorney Hahnfeld. R.T. called Attorney Hahnfeld's office numerous times thereafter and left messages, either on the office answering machine or with Attorney Hahnfeld's secretary, requesting a full refund of the fees he had paid. Attorney Hahnfeld did not return R.T.'s calls.

¶ 21. On November 23, 2004, R.T. filed a grievance with the OLR. The OLR contacted Attorney Hahnfeld and advised him about R.T.'s concerns. Attorney Hahnfeld told the OLR staff that he had authorized his staff to send the refund but did not know whether it had been done. Attorney Hahnfeld also said he would issue a refund that day and would furnish the OLR with proof via facsimile. By letter dated December 9, 2004, the OLR informed Attorney Hahnfeld that his written response to the R.T. grievance was required by January 3, 2005. By January 11, 2005, Attorney Hahnfeld had not submitted his written response nor had he contacted the OLR to ask for additional time to respond.

¶ 22. The OLR called Attorney Hahnfeld's office and left a message on his voicemail reminding him that his response to the R.T. grievance was overdue and requesting that Attorney Hahnfeld contact the OLR to

indicate when his response could be expected. Attorney Hahnfeld did not return the OLR's call.

¶ 23. On January 13, 2005, the OLR sent Attorney Hahnfeld, via facsimile and certified mail, its second request for Attorney Hahnfeld's response to R.T.'s grievance. On January 26, 2005, Attorney Hahnfeld sent his response via facsimile to the OLR, and he issued a check to R.T. for $750 from his firm's general operating account.

¶ 24. By letter dated December 6, 2005, the OLR requested additional information from Attorney Hahnfeld in R.T.'s matter. Attorney Hahnfeld failed to respond by the date requested, and he did not request additional time to respond. On January 3, 2006, the OLR sent Attorney Hahnfeld a second request for the additional information. He again failed to respond. The OLR contacted Attorney Hahnfeld's office by telephone on January 17, 2006, and was told that Attorney Hahnfeld was in his office but was on another call. Attorney Hahnfeld did not return the call but finally did fax his response to the OLR's request for additional information later that day.

¶ 25. Attorney Hahnfeld filed an answer to the OLR's complaint on August 3, 2006. The OLR filed an amended complaint on October 19, 2006. On September 25, 2006, James J. Winiarski was appointed referee. A scheduling conference was held on December 5, 2006.

¶ 26. On January 4, 2007, Attorney Hahnfeld filed a notice indicating that he was withdrawing all responsive pleadings and was entering a plea of no contest to all allegations in the OLR's complaint. Attorney Hahnfeld also advised that he was accepting the OLR's offer to recommend a 60–day suspension of his license to practice law in Wisconsin. The referee gave the parties the opportunity to file a brief on the issue of

the appropriate discipline. The OLR filed a memorandum. Attorney Hahnfeld did not file any additional documents discussing the appropriate discipline.

¶ 27. The referee issued his report and recommendation on May 8, 2007. The referee concluded that the OLR had met its burden of proving all counts of misconduct alleged in the complaint. Those counts are as follows:

## COUNT 1

1. By failing to prepare an order following the May 16, 2003, divorce hearing, Hahnfeld failed to act with reasonable diligence and promptness in representing [K.C.] in his post-judgment divorce matter, in violation of SCR 20:1.3.[1]

## COUNT 2

2. By failing to keep his client advised as to the requests of opposing counsel for additional documentation or to otherwise keep his client advised as to the progress in the matter, other than to tell him he was preparing the order relating to the May 16, 2003, hearing, and by further failing to respond to [K.C.]'s telephone calls regarding the status of his case, Hahnfeld failed to keep [K.C.] informed about the status of

---

[1] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. See Supreme Court Order No. 04–07, 2007 WI 4, 293 Wis. 2d xv; and Supreme Court Order No. 06–04, 2007 WI 48, 297 Wis. 2d xlvii. Since the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

Former SCR 20:1.3 provides that a lawyer "shall act with reasonable diligence and promptness in representing a client."

his matter and respond to his reasonable requests for information, in violation of SCR:1.4(a).[2]

## COUNT 3

3. By failing to take the action necessary to give effect to the Court's decision regarding the distribution of funds held in trust from the sale of the homestead, thereby preventing the prompt release of those funds held in trust, Hahnfeld failed to promptly deliver, to his client or a third party, funds held in trust, in violation of SCR 20:1.15(b).[3]

## COUNT 4

4. By failing to respond to the grievance of [K.C.] within 20 days after being served by ordinary mail with a request for response, Hahnfeld failed to cooperate with an OLR investigation, in violation of SCR 22.03(2),[4]

---

[2] Former SCR 20:1.4(a) provides that a lawyer "shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] Former SCR 20:1.15(b) (effective through June 30, 2004), states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[4] SCR 22.03(2) states: Investigation.

> (2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20

which is enforceable under SCR 20:8.4(f),[5] which states in part that it is professional misconduct to violate a Supreme Court Rule regulating the conduct of lawyers.

## COUNT 5

5. Upon conclusion of the [S.E.] divorce, by failing to draft and submit to the court the findings of fact, conclusions of law, and judgment of divorce within the 30-day time limit, Hahnfeld failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

## COUNT 6

6. By failing to explain to his client the basis or rate of his fee at the outset of the representation, Hahnfeld violated SCR 20:1.5(b).[6]

## COUNT 7

7. By failing to promptly turn over [S.E.]'s file materials to either her or her successor counsel, Hah-

---

days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[5] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[6] Former SCR 20:1.5(b) states that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

nfeld failed to take steps to the extent reasonably practicable to protect the client's interest upon termination of representation, in violation of SCR 20:1.16(d).[7]

## COUNT 8

8. By failing to respond to OLR regarding the grievance of [S.E.] within 20 days after being served by ordinary mail with a request for response, Hahnfeld failed to cooperate with an OLR investigation, in violation of SCR 22.03(2), which is enforceable under SCR 20:8.4(f), which states in part that it is professional misconduct to violate a Supreme Court Rule regarding the conduct of lawyers.

## COUNT 9

9. By failing to return any of [R.T.]'s calls on the day of the motion hearing he did not attend and on subsequent occasions, Hahnfeld failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

## COUNT 10

10. By failing to refund the $750.00 fee within a reasonable time after his failure to appear at the September 20, 2004, motion hearing on behalf of his

[7] Former SCR 20:1.16(d) states: Declining or terminating representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

client, Hahnfeld failed to take steps to the extent reasonably practicable to protect a client's interest upon termination of representation, including a refund of any advance payment of a fee that had not been earned, in violation of SCR 20:1.16(d).

## COUNT 11

11. By failing to respond within 20 days to [R.T.]'s grievance and, in addition, by failing to timely provide additional information requested during the investigation, Hahnfeld violated SCR 21.15(4)[8] and SCR 22.03(6),[9] which require cooperation with an OLR investigation, enforceable under SCR 20:8.4(f).

¶ 28. With respect to the appropriate discipline to impose, the referee noted that Attorney Hahnfeld received two previous public reprimands, the first for misconduct similar to that found in this case. The referee said Attorney Hahnfeld showed a pattern of failing to respond to client communications and often ignored his duty to keep his clients properly informed of the status of their cases. The referee said, "[t]hese disturbing patterns collectively show either a disregard

[8] SCR 21.15(4) provides: Duties of attorneys.

(4) Every attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys.

[9] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

of professional responsibilities or the inability to perform professional responsibilities due to some outside cause."

¶ 29. The referee also said he was concerned with Attorney Hahnfeld's lack of cooperation with the OLR, and he said this conduct showed a disregard of professional duties or the inability to perform those duties. The referee said he was most concerned with the repetitious nature of Attorney Hahnfeld's neglect of files and his failure to communicate with his clients. The referee noted the imposition of two prior public reprimands had not impressed upon Attorney Hahnfeld the need to change his practices. The referee said given that Attorney Hahnfeld received two prior public reprimands and yet continued his pattern of neglecting client matters, the OLR's request for a 60–day license suspension was "generous and probably at the low end of the range of appropriate discipline in this matter."

¶ 30. The referee commented that it would have been helpful to have some evidence from Attorney Hahnfeld as to why he continued his pattern of neglect in client matters and whether there was some other cause for the neglect. The referee recommended that Attorney Hahnfeld's license be suspended for a period of 60 days. In addition, he also recommended that Attorney Hahnfeld be required to obtain an AODA/psychological evaluation within 30 days of the date of suspension in order to determine whether he has any ailment which would interfere with his continued practice of law at the conclusion of the period of suspension. The referee recommended that reinstatement should be conditioned upon a satisfactory AODA/psychological evaluation.

¶ 31. No appeal has been filed from the referee's report and recommendation.

¶ 32. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. Attorney Hahnfeld has entered a no contest plea to all eleven counts of misconduct alleged in the OLR's complaint.

¶ 33. The referee's findings of fact in this case have not been shown to be clearly erroneous, and we adopt them. We also agree with the referee's conclusions of law. We further agree with the referee's recommendation for a 60–day suspension of Attorney Hahnfeld's license to practice law in Wisconsin, and we agree with the referee's recommendation that Attorney Hahnfeld undergo an AODA/psychological evaluation as a prerequisite to having his license reinstated. Finally, we find it appropriate to require Attorney Hahnfeld to pay the full costs of this proceeding.

¶ 34. IT IS ORDERED that the license of Donald A. Hahnfeld to practice law in Wisconsin is suspended for a period of 60 days, effective November 8, 2007.

¶ 35. IT IS FURTHER ORDERED that within 60 days of the date of this order, Donald A. Hahnfeld pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Donald A. Hahnfeld to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 36. IT IS FURTHER ORDERED that within 30 days of the date of this order Donald A. Hahnfeld shall obtain an AODA/psychological evaluation. The reinstatement of his license to practice law shall be conditioned upon Donald A. Hahnfeld obtaining a satisfactory AODA/psychological evaluation.

¶ 37. ANNETTE KINGSLAND ZIEGLER, J., did not participate.