In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Joan M. BOYD, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Joan M. BOYD, Respondent.

Supreme Court

*No. 2007AP588–D. Decided July 18, 2008.*

2008 WI 103

(Also reported in 752 N.W.2d 882.)

¶ 1. PER CURIAM. We review a referee's report finding that Attorney Joan M. Boyd engaged in professional misconduct with respect to her handling of three client matters. The referee recommended that Attorney Boyd's license to practice law in Wisconsin be suspended for six months.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We determine, however, that the seriousness of Attorney Boyd's misconduct warrants the suspension of her

16

license to practice law for five months. We further agree with the referee's recommendations that Attorney Boyd be ordered to make restitution to her clients and that she pay the costs of the proceeding, which are $14,654.40 as of April 23, 2008.

¶ 3. Attorney Boyd was admitted to practice law in Wisconsin in 1989 and practices in Shawano. A significant portion of her practice is apparently devoted to handling bankruptcies since she stated at the public hearing before the referee that she has handled between 1,000 and 1,200 bankruptcy cases since starting her practice.

¶ 4. Attorney Boyd has received two prior public reprimands. In 2000 she was reprimanded for forging her clients' endorsements on the back of a refund check that was issued by a bankruptcy trustee to the clients and arranging for the refund check to be deposited into her checking account. She also made a misrepresentation to the bankruptcy trustee's staff that the clients had endorsed the check. Public Reprimand of Joan M. Boyd, 2000–4.

¶ 5. In 2006 Attorney Boyd received another public reprimand for failing to deposit a fee into her client trust account and commingling her own funds in her trust account and failing to provide the legal skill or preparation reasonably necessary to handle a federal civil rights claim and charging a client an unreasonable fee. *In re Disciplinary Proceedings Against Boyd,* 2006 WI 28, 289 Wis. 2d 351, 711 N.W.2d 286.

¶ 6. On March 14, 2007, the Office of Lawyer Regulation (OLR) filed a complaint alleging that Attorney Boyd committed five counts of misconduct with respect to her handling of three client matters. Two of the client matters involved bankruptcy cases and the third involved a criminal postconviction matter.

17

¶ 7.   The first client matter detailed in the OLR's complaint involved Attorney Boyd's representation of Mr. and Mrs. M. in a bankruptcy case. Mr. and Mrs. M. first contacted Attorney Boyd around November 2004 regarding their interest in pursuing a chapter 7 bankruptcy. Mr. and Mrs. M. provided some financial information to Attorney Boyd, and she prepared bankruptcy schedules, but Mr. and Mrs. M. did not follow through with the bankruptcy at that time.

¶ 8.   On January 5, 2005, Mr. and Mrs. M. had a house fire that destroyed their home and many of their personal belongings. They received approximately $50,000 in insurance money as a result of the fire.

¶ 9.   In March of 2005, Mr. and Mrs. M. again met with Attorney Boyd. They told her about the fire and said the bankruptcy petition needed to be updated. Mr. and Mrs. M. signed the bankruptcy schedules on March 21, 2005, and Attorney Boyd filed them in the U.S. Bankruptcy Court for the Eastern District of Wisconsin on March 28. Attorney Boyd inserted some reference to the fire in the bankruptcy schedules, including the comment that numerous personal property items were "lost in fire." The bankruptcy schedules did not disclose that Mr. and Mrs. M. had received $50,000 in insurance money after the fire, nor did the schedules report that Mr. and Mrs. M. had a $10,000 balance in a checking account or that prior to filing the bankruptcy they had bought furniture and electronics and put them on layaway.

¶ 10.   Larry Liebzeit (Liebzeit), the bankruptcy trustee, wrote to Attorney Boyd on April 11, 2005, asking her to provide documents concerning the settlement of Mr. and Mrs. M.'s fire loss. The meeting of creditors was continued to June 9, 2005. Liebzeit wrote Attorney Boyd asking that Mr. and Mrs. M. attend the

meeting. Liebzeit also requested copies of all bank statements from any accounts from December 1, 2004, through the present in addition to a list of specific property on layaway.

¶ 11. Neither Attorney Boyd nor Mr. and Mrs. M. appeared for the June 9, 2005, meeting of creditors. Liebzeit was not given notice that none of them would appear. Attorney Boyd told OLR staff that Mr. and Mrs. M. told her they would not appear at the hearing, and she also said she was fearful of appearing in front of Liebzeit.

¶ 12. On June 16, 2005, Liebzeit filed a motion to extend the time in which he and/or the assistant trustee could object to Mr. and Mrs. M.'s discharge. Liebzeit also filed a motion to compel Mr. and Mrs. M. to attend another meeting of creditors scheduled for August 4, 2005. On June 23, 2005, Attorney Boyd filed a response to Liebzeit's motions saying that because Mr. and Mrs. M. had previously been subjected to harsh treatment by the trustee they did not appear at the June 9 meeting of creditors.

¶ 13. On June 30, 2005, the assistant trustee filed an adversary proceeding against Mr. and Mrs. M. in bankruptcy court and sought to deny their discharge in bankruptcy. The complaint alleged that Mr. and Mrs. M. failed to fully and accurately disclose personal property and/or fire insurance proceeds, bank accounts, motor vehicles, etc. The complaint also alleged that Mr. and Mrs. M. had provided false and misleading information regarding the value of the property lost in the fire and that Mr. and Mrs. M.'s nondisclosures were material because the value of the items not disclosed greatly exceeded the exemptions claimed by Mr. and Mrs. M.

¶ 14. On July 5, 2005, Liebzeit filed a motion for an order compelling Mr. and Mrs. M. to turn over

19

property, including bank accounts. The motion alleged that Liebzeit believed Mr. and Mrs. M. had received insurance payments of approximately $53,000 and had used the funds to buy a truck and had also bought a significant amount of furniture on layaway. The motion also alleged that Mr. and Mrs. M.'s bankruptcy schedules did not report the accurate value of the furniture that had been purchased.

¶ 15.   On July 8, 2005, Attorney Boyd filed an objection to Liebzeit's motion to turn over property and asserted that the insurance proceeds were intended to replace Mr. and Mrs. M.'s possessions that had been lost in the fire. Attorney Boyd alleged that Liebzeit was acting in bad faith and attempting to intimidate Mr. and Mrs. M.

¶ 16.   On July 12, 2005, the bankruptcy court held a telephonic conference and decided to hold Liebzeit's motions in abeyance, pending a motion to dismiss the case that would be filed by Mr. and Mrs. M. The court advised Attorney Boyd that if Mr. and Mrs. M.'s motion to dismiss was denied, then Mr. and Mrs. M. would be required to attend another meeting of creditors.

¶ 17.   Sometime prior to July 28, 2005, Mr. and Mrs. M. terminated Attorney Boyd's representation and hired Attorney Dayten Hanson to represent them. Attorney Hanson filed a motion to dismiss the bankruptcy petition and asserted that Mr. and Mrs. M. no longer wanted to file bankruptcy. Attorney Hanson's motion alleged that Attorney Boyd had prepared inadequate and incorrect bankruptcy schedules, and that Mr. and Mrs. M. no longer wanted to proceed with the bankruptcy. Attorney Hanson alleged that the schedules failed to include a reference to the insurance proceeds, Mr. and Mrs. M.'s house was twice listed on one schedule, the checking account information was not

20

updated since November 2004, and there were inconsistent references to the fair market value assigned to one item of property. A hearing was held on August 22, 2005. Attorney Boyd did not attend. Mr. and Mrs. M.'s bankruptcy was dismissed with a one-year bar to re-filing.

¶ 18. The second client matter detailed in the OLR's complaint involved Attorney Boyd's representation of V.J. in a bankruptcy matter. Attorney Boyd filed a chapter 7 bankruptcy petition on V.J.'s behalf in the U.S. Bankruptcy Court for the Eastern District of Wisconsin on October 6, 2005. On or about December 15, 2005, Liebzeit, who was the trustee of V.J.'s bankruptcy estate, filed an objection to V.J.'s claim of exemptions pertaining to a $30,000 Edward Jones account which V.J. had claimed was exempt. Liebzeit asserted the account was not totally exempt, and he asked the court to determine that the account was not exempt and order that the nonexempt proceeds be turned over to the trustee as property of the estate.

¶ 19. On January 11, 2006, Attorney Boyd filed an amended Schedule C and again listed the Edward Jones account as being exempt in the amount of $30,000. On January 18, 2006, Liebzeit filed an objection to the amended claim of exemptions. Liebzeit also raised additional concerns regarding other claimed exemptions. He asked the court to determine that V.J. was not entitled to the exemptions and to order that the balance of the nonexempt proceeds and assets be turned over to the trustee as property of the estate.

¶ 20. On January 20, 2006, the bankruptcy court held a hearing and sustained the trustee's objection to V.J.'s claim of exemption of the Edward Jones account. On February 8, 2006, Attorney Boyd filed an amended Schedule C which continued to list the Edward Jones account as a claimed exemption.

21

¶ 21. On February 13, 2006, the court discharged V.J. in bankruptcy. On February 14, 2006, Liebzeit filed an objection to V.J.'s amended claim of exemptions and again asked the court to determine that V.J. was not entitled to the exemption relating to the Edward Jones account. On February 22, 2006, the court issued an order sustaining the trustee's objection and finding that the Edward Jones account was not exempt.

¶ 22. On April 19, 2006, Liebzeit filed a notice of trustee's proposed abandonment, indicating that Liebzeit intended to abandon the property listed on V.J.'s Schedule B (which requires the debtor to list all personal property) with exceptions regarding the Edward Jones account and V.J.'s car. On May 30, 2006, Liebzeit filed documentation with the court stating that no objections had been filed and that the trustee abandoned the estate's interest in the property as listed on the notice filed on April 19.

¶ 23. Only a portion of the Edward Jones account (less than $6,000) would be exempt under a wildcard exemption under bankruptcy rules. From the outset V.J. had sufficient funds to pay her credit card indebtedness and have money left over in her investment account. Thus, V.J. was not a candidate to file for bankruptcy. As a result of pursuing the bankruptcy, V.J. incurred unnecessary trustee/attorney/accountant fees of approximately $3,000.

¶ 24. The third client matter detailed in the OLR's complaint involved Attorney Boyd's representation of C.B. in a criminal postconviction matter. In May 1998 C.B. was convicted in Racine County circuit court of being party to the crime of attempted first-degree intentional homicide and multiple counts of party to the crime of first- and second-degree recklessly endanger-

ing safety. He pursued a direct appeal, which was denied in January 2000. A petition for review was denied in June 2000.

¶ 25.   C.B. hired Attorney Boyd in 2002. C.B.'s mother, M.H., paid Attorney Boyd $2,000 for a postconviction motion. Attorney Boyd told M.H. that she had experience in criminal law and was very familiar with the appeal process.

¶ 26.   On July 31, 2003, Attorney Boyd filed a motion for postconviction relief in Racine County circuit court based on ineffective assistance of trial and appellate counsel. The motion was denied. During the motion hearing the circuit judge asked Attorney Boyd to describe in detail the aspects of the ineffective assistance of counsel claim. One of the concerns recited by Attorney Boyd was a possible relationship between C.B.'s trial counsel and the appellate counsel such that the appellate counsel never raised the issue of trial counsel's ineffectiveness during C.B.'s direct appeal.

¶ 27.   Attorney Ann Auberry was appellate counsel. She testified that she had a friendly professional relationship with C.B.'s trial counsel, Wynne Laufenberg, but had never had any social contacts with him outside of work. Attorney Auberry also indicated that she found no reason to believe that Attorney Laufenberg had provided ineffective assistance of counsel. At the close of the hearing the circuit court suggested that Attorney Boyd had been unorganized in terms of the issues presented and ruled that there was no basis to find any professional conflict of interest between C.B.'s trial and appellate attorneys. The court said by suggesting such a conflict existed, Attorney Boyd's conduct was "reprehensible" and "inexcusable." The court also concluded that there was no showing of ineffective assistance of counsel and that there was no evidence pre-

23

sented of any failure by Attorney Auberry to raise meritorious claims on appeal or to call critical witnesses. The court concluded that Attorney Boyd had failed "miserably to meet your burden of proof by this poor presentation." The circuit court denied the postconviction motion.

¶ 28. C.B. hired Attorney Boyd to file an appeal of the circuit court's order denying his postconviction motion. M.H. paid Attorney Boyd $500 for representation on the appeal. On February 25, 2004, Attorney Boyd filed a notice of appeal. On March 30, 2005, the court of appeals dismissed the appeal and admonished Attorney Boyd for preparing "an incomplete and confusing appendix to the appellant's brief."

¶ 29. C.B. hired Attorney Boyd to file a petition for review in this court. M.H. paid Attorney Boyd $1,500 for the representation. Attorney Boyd filed a petition for review on April 29, 2005. This court denied the petition on July 28, 2005. It was not until November 21, 2005, that Attorney Boyd told M.H. that the petition for review had been denied.

¶ 30. Stanley F. Hack was appointed referee. The matter was set for a two-day hearing starting on September 25, 2007. Shortly before the hearing was to begin, Attorney Boyd stipulated to the allegations of the complaint and asked to proceed solely on the issue of sanctions. A hearing was held on sanctions.

¶ 31. After the hearing, the parties submitted proposed findings of fact and conclusions of law. The OLR filed a motion to strike Attorney Boyd's proposed findings of fact and conclusions of law. Attorney Boyd then indicated a desire to withdraw her stipulation. Following a hearing, the referee entered an order on January 14, 2007, allowing Attorney Boyd to withdraw the stipulation.

¶ 32. Another hearing was held in March 2008. The referee's report and recommendation was filed on May 6, 2008.

■

¶ 33. The referee found that the OLR had met its burden of establishing all five counts of misconduct alleged in the complaint. Specifically, the referee found that Attorney Boyd failed to provide competent representation to a client, in violation of former SCR 20:1.1[1] in the Mr. and Mrs. M., V.J., and C.B. matters; that she failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3[2] in the Mr. and Mrs. M. matter; and that she engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c)[3] in the C.B. matter.

¶ 34. Although the OLR had asked for a 90–day suspension of Attorney Boyd's license, the referee con-

---

[1] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. See S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

Former SCR 20:1.1 states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[2] Former SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[3] Former SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

cluded that a six-month suspension was appropriate. In reaching this conclusion, the referee pointed to the fact that Attorney Boyd previously received two public reprimands. The referee also found there were "serious issues of credibility" on Attorney Boyd's part, and the referee said it was necessary for Attorney Boyd to establish that she understands her obligations to clients and the legal system and that she will act competently in representing clients in the future. The referee also recommended that Attorney Boyd pay the full costs of the proceeding.

¶ 35.  Although the referee's report and recommendation also called for Attorney Boyd to reimburse her clients, it did not set forth any specific amounts of reimbursement. Following the filing of the referee's report and recommendation the parties entered into a stipulation setting forth the specific amounts of reimbursement that they deemed appropriate. The referee incorporated those stipulated amounts into the addendum to his report filed on May 8, 2008.

¶ 36.  Attorney Boyd attempted to file an appeal from the referee's report and recommendation, but the court previously ruled that her appeal was untimely. Thus, our review proceeds under SCR 22.17(2).[4] This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against*

_____

[4] SCR 22.17(2) provides:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

26

*Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may also impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. The referee's findings of fact have not been shown to be clearly erroneous and we adopt them. We also agree with the referee's conclusions of law.

██

¶ 37.   As to the appropriate sanction, we agree with the referee that a 90–day suspension would be inadequate. By her own admission, Attorney Boyd has handled in excess of 1,000 bankruptcies in her legal career. The mistakes she made in handling the Mr. and Mrs. M. and V.J. bankruptcies were serious failings which caused her clients to incur unnecessary expenses. Attorney Boyd also misled C.B. and M.H. into believing she was experienced in handling postconviction criminal matters. We agree with the referee that the sanction imposed must be sufficient to impress upon Attorney Boyd the seriousness of her misconduct. We believe, however, that a five-month suspension, rather than the six months recommended by the referee, will accomplish this goal. We also agree with the referee's recommendation that Attorney Boyd be required to make restitution to her clients in the amounts detailed in the addendum to the referee's report, and that she be required to pay the full costs of the proceeding.

¶ 38.   IT IS ORDERED that the license of Joan M. Boyd to practice law in Wisconsin is suspended for a period of five months, effective August 25, 2008.

¶ 39.   IT IS FURTHER ORDERED that within 180 days of the date of this order, Joan M. Boyd make restitution to her clients in the amounts set forth in the addendum to the referee's report. If restitution is not

paid within the time specified, and absent a showing to this court of her inability to pay restitution within that time, the license of Joan M. Boyd to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 40. IT IS FURTHER ORDERED that within seven months of the date of this order, Joan M. Boyd pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of her inability to pay the costs within that time, the license of Joan M. Boyd to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 41. IT IS FURTHER ORDERED that Joan M. Boyd comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.