IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
David G. MERRIAM, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant,

v.

David G. MERRIAM,
Respondent.

Supreme Court

*No. 2008AP2043–D.—Decided March 25, 2010.*

2010 WI 21

(Also reported in 780 N.W.2d 150.)

¶ 1. PER CURIAM. We review a stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney David G. Merriam. The stipulation sets forth ten counts of professional misconduct by Attorney Merriam. It requests that the court suspend Attorney Merriam's license to practice law in Wisconsin for 90 days, that the court require Attorney Merriam to provide quarterly certifications that he is complying with his health care provider's depression treatment recommendations for a period of two years, and that the court require Attorney Merriam to join and participate in the State Bar of Wisconsin's Practice411 practice management service. After reviewing the matter, we accept the stipulation and impose the requested discipline as well as the conditions on Attorney Merriam's post-suspension practice of law.

¶ 2. Attorney Merriam was admitted to the practice of law in Wisconsin in 1972, and maintains a law practice in Madison. He received consensual private reprimands in 1992 and 1995 for, among other things, neglecting to file an estate tax return, failing to respond to client inquiries, and failing to cooperate with an investigation by the Board of Attorneys Professional Responsibility (BAPR). In 2000 Attorney Merriam was publicly reprimanded for failing to conclude the probate of an estate in a timely manner and failing to cooperate with BAPR's investigation. In 2003 Attorney Merriam

was again publicly reprimanded for failing to provide a written response to an OLR investigation.

¶ 3. The first count of misconduct discussed in the current stipulation arises out of Attorney Merriam's representation of client D.H. On October 14, 2005, Attorney Merriam filed a Chapter 7 bankruptcy petition on behalf of D.H. In the bankruptcy D.H. declared that she intended to reaffirm an automobile loan with Mazda American Credit (Mazda). After Mazda learned of this intent to reaffirm, it sent a proposed reaffirmation agreement to Attorney Merriam, but he never forwarded it to D.H. for her signature and therefore the loan was not reaffirmed. After the bankruptcy discharge order was entered, D.H. discovered that her debt to Mazda had been discharged and that it could no longer be reaffirmed.

¶ 4. In addition, on November 22, 2005, the bankruptcy trustee's office requested documents and other information from Attorney Merriam in order to determine whether the Chapter 7 proceeding should be dismissed due to D.H.'s ability to repay a substantial portion of her unsecured debts. Although the request sought a response within 15 days, Attorney Merriam did not provide the requested information until April 10, 2006. Attorney Merriam's five-month delay caused the trustee to file two motions to extend the time for filing a motion to dismiss the bankruptcy petition. Ultimately, the trustee did file a motion to dismiss the bankruptcy petition on March 22, 2006. When Attorney Merriam finally provided the requested information, the motion to dismiss was withdrawn, and a discharge order was entered shortly thereafter.

¶ 5. D.H. complained to the OLR, which asked Attorney Merriam for a response. Attorney Merriam acknowledged that the failure to complete the reaffir-

638

mation agreement had been his fault and apologized for "whatever distress this has caused [D.H.]." When the OLR issued a request for additional information about the grievance, however, Attorney Merriam failed to provide a timely response. He did ultimately respond, although approximately three weeks late. In his second response, he stated that he did not know why he had failed to provide the information requested by the trustee. He did note that the events regarding the D.H. bankruptcy had occurred while he had been suffering from severe depression. He stated he first realized he was depressed in November or December of 2006, at which time he sought and received help.

¶ 6. With respect to the D.H. representation, the stipulation provides that Attorney Merriam failed to act with reasonable diligence and promptness, in violation of SCR 20:1.3.[1] Attorney Merriam admits that he violated this rule.

¶ 7. The next set of ethical violations relate to Attorney Merriam's representation of client T.A., which also involved a bankruptcy proceeding.

¶ 8. T.A. sold his farm and gave $10,000 from the sale proceeds to his daughter at some point between January 5, 2005, and March 17, 2005. Under then existing bankruptcy law, if T.A. filed a bankruptcy petition within one year of the transfer, there would be adverse consequences to T.A.

¶ 9. On March 17, 2005, T.A. retained Attorney Merriam for the purpose of filing a bankruptcy petition. T.A. gave Attorney Merriam an initial payment of $810, $210 of which was for the filing fee and $600 of which

---

[1] SCR 20:1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."

was for Attorney Merriam's fees. Attorney Merriam placed this money into his business account instead of his client trust account. Attorney Merriam learned of T.A.'s $10,000 gift either at the time that T.A. retained him or shortly thereafter. Despite his knowledge of this event, Attorney Merriam still accepted and retained T.A.'s advance payment.

¶ 10. Indeed, because of a change in bankruptcy law in late 2005, T.A. arguably could not file a bankruptcy petition until March 2007 if he wished to avoid adverse consequences from his $10,000 gift to his daughter. Attorney Merriam nonetheless continued to retain the advance payment. Toward the end of 2005, T.A. attempted to contact Attorney Merriam about the status of the bankruptcy filing, but he received no response.

¶ 11. Another provision in the bankruptcy code required a debtor to attend a credit counseling session within 180 days prior to filing a bankruptcy petition and to attend a second session prior to discharge. T.A. contacted Attorney Merriam in June 2006, and based on Attorney Merriam's advice, he attended the first required counseling session on June 14, 2006. Consequently, in order to comply with the bankruptcy code requirement that the first session be attended within 180 days prior to the filing of the bankruptcy petition, Attorney Merriam would have needed to file the petition by approximately the middle of December 2006, well before the two-year anniversary of T.A.'s $10,000 gift to his daughter.

¶ 12. Because Attorney Merriam had still failed to file the bankruptcy petition, T.A. filed a grievance with the OLR against Attorney Merriam in October 2006. Shortly thereafter, T.A. became incarcerated. In mid-November, he spoke with Attorney Merriam, who prom-

ised to visit him in the jail. Attorney Merriam, however, failed to follow through on the visit. An OLR investigator subsequently spoke with Attorney Merriam on December 14, 2006, at which time Attorney Merriam told the investigator that he would meet with T.A. and file the bankruptcy petition by the end of December. This did not occur.

¶ 13. Beginning on January 2, 2007, T.A. began to call Attorney Merriam every weekday at 2:30 p.m., but Attorney Merriam did not answer the phone or return T.A.'s messages. In early January 2007 Attorney Merriam told the OLR investigator that he would provide proof no later than January 20, 2007, that the bankruptcy petition had been filed. No such proof was provided. Consequently, the OLR referred the grievance for a formal investigation and directed Attorney Merriam to provide a written response to the grievance by March 5, 2007.

¶ 14. On February 14, 2007, Attorney Merriam sent an $810 refund check to T.A., stating that he would be unavailable for the next several weeks and promising to visit the jail where T.A. was incarcerated in early March in order to finalize the bankruptcy petition unless T.A. had hired a different attorney in the interim. On March 8, 2007, Attorney Merriam did visit T.A., who instructed Attorney Merriam to proceed with filing the bankruptcy petition.

¶ 15. On March 20, 2007, after the OLR had sent a second request for a written response to the grievance, Attorney Merriam belatedly responded to the OLR's written request for information. He admitted that he had not adequately communicated with T.A. He stated to the OLR for the first time that he could not have filed the bankruptcy petition prior to March 17, 2007, without adverse consequences because of T.A.'s

$10,000 gift to his daughter. He again stated the events regarding the T.A. representation had occurred while he had been seriously depressed.

¶ 16. Attorney Merriam did not actually file the bankruptcy petition for T.A. until July 10, 2007. In preparation for that filing, Attorney Merriam recognized that the Certificate of Counseling given to T.A. for his June 2006 attendance was too old to satisfy the bankruptcy credit counseling requirement. Attorney Merriam therefore contacted the credit counselor, who created a false certificate showing that T.A. had attended a counseling session on May 1, 2007, and faxed it to Attorney Merriam. Attorney Merriam also had T.A. execute a Statement of Compliance with Credit Counseling Requirement, which falsely stated under penalty of perjury that T.A. had complied with the pre-filing counseling requirement. Attorney Merriam filed the false Statement of Compliance and the false Certificate of Counseling with the bankruptcy petition.

¶ 17. In June and July 2007, Attorney Merriam again failed to respond to the OLR's requests for additional information about the status of the bankruptcy petition. He finally submitted a response, dated July 31, 2007, in which he asserted that the delay in filing the bankruptcy petition had been caused by a delay in payment from the sheriff's office, which had control over T.A.'s money while he had been in jail.

¶ 18. The bankruptcy trustee ultimately issued a Report of No Distribution/No Assets, which meant that T.A. could obtain a discharge order as soon as he completed the second credit counseling session. Attorney Merriam, however, did not advise T.A. of this fact. Despite the fact that the bankruptcy court sent two notices to Attorney Merriam indicating that it needed to receive the Certificate of Completion for the second

counseling session or the bankruptcy case could be prematurely closed, Attorney Merriam did not forward the notices to T.A. or speak with him about the required second counseling session.

¶ 19. In February and April 2008 the OLR again attempted to communicate with Attorney Merriam via letter and voice-mail message, but Attorney Merriam failed to respond until April 30, 2008. In that belated response, Attorney Merriam indicated that he had finally instructed T.A. to schedule the required second counseling session. T.A. attended a second counseling session within a few weeks.

██

¶ 20. With respect to the T.A. representation, Attorney Merriam has stipulated that he committed five counts of misconduct. His deposit of T.A.'s initial $810 advance payment into his business account instead of his client trust account violated former SCR 20:1.15(b)(4).[2] His failure to keep T.A. adequately informed of the status of the bankruptcy petition, including the need to complete the credit counseling requirements, violated both former and present SCR 20:1.4.[3]

---

[2] Former SCR 20:1.15(b)(4) (effective July 1, 2004, through June 30, 2007) provided as follows: "Unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to SCR 20:1.15(g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred."

[3] Former SCR 20:1.4(a) (effective through June 30, 2007) stated, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

Current SCR 20:1.4 (effective July 1, 2007) provides:

(a) A lawyer shall:

Attorney Merriam's filing of the counselor's false Certificate of Counseling and T.A.'s false certification of the accuracy of that Certificate of Counseling violated SCR 20:3.3(a).[4] Similarly, by knowingly preparing and providing T.A. with a false Statement of Compliance with

(1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in SCR 20:1.0(f), is required by these rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests by the client for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[4] SCR 20:3.3(a) provides:

A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter that the lawyer reasonably believes is false.

Credit Counseling Requirement, Attorney Merriam violated SCR 20:1.2(d).[5] Finally, Attorney Merriam's multiple failures to respond to the OLR's requests for a written response to T.A.'s grievance and to the OLR's supplemental requests for information constituted violations of SCRs 22.03(2), 22.03(6),[6] and 21.15(4),[7] which

---

[5] SCR 20:1.2(d) states:

A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

[6] SCRs 22.03(2) and (6) provide as follows:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[7] SCR 21.15(4) states:

Every attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys.

645

are enforceable through SCR 20:8.4(f).[8] Attorney Merriam's failure to respond in 2008 also violated SCR 20:8.4(h), which became effective as of July 1, 2007.[9]

¶ 21. The third set of violations committed by Attorney Merriam relate to his representation of R.K. and M.K. As with the prior representations described above, R.K. and M.K. also retained Attorney Merriam to represent them in a bankruptcy proceeding. They made an initial payment in October 2007 of $1,300, which was to cover the $300 bankruptcy filing fee and Attorney Merriam's flat attorney fee of $1,000.

¶ 22. R.K. and M.K. informed Attorney Merriam that approximately two years earlier, on October 13, 2005, they had executed a quit claim deed that had transferred a remainder interest in their home to their daughters while reserving a life estate in the property for themselves. Attorney Merriam did not advise R.K. and M.K. as to the effect the transfer of the remainder interest might have on a bankruptcy petition or the effect that the bankruptcy petition might have on the transfer.

¶ 23. Attorney Merriam filed the bankruptcy petition on November 20, 2007. Attorney Merriam listed the life estate on the schedule of assets, with a value of $29,900. The life estate in the home was listed as an exempt asset.

---

[8] SCR 20:8.4(f) states it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

[9] SCR 20:8.4(h) says it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

¶ 24.   At the first meeting of creditors on December 20, 2007, the bankruptcy trustee asked questions about the 2005 quit claim deed and postponed conclusion of the meeting. Attorney Merriam subsequently admitted to R.K. and M.K. that he had made a mistake regarding the amount of time that needed to pass after the 2005 transfer in order to avoid the risk of the transfer being nullified in a bankruptcy action. R.K. and M.K. were led to believe that Attorney Merriam was attempting to address this problem, but Attorney Merriam took no steps to negotiate with the trustee or otherwise resolve the issue. When R.K. and M.K. subsequently tried to contact Attorney Merriam, he failed to respond to their telephone calls.

¶ 25.   On May 13, 2008, the trustee sent a letter to the daughters of R.K. and M.K. expressing his opinion that the transfer of the remainder interest to them was voidable, and that the bankruptcy court would transfer that interest to the trustee in order to satisfy the claims of their parents' creditors. The trustee suggested the daughters should confer with an attorney and make a proposal.

¶ 26.   R.K. and M.K. thereafter again tried to contact Attorney Merriam, but he did not respond. They then communicated directly with the trustee by letter, telling him that Attorney Merriam had admitted making a mistake in filing the petition when he had. They offered to make monthly payments in an effort to avoid invalidating the transfer. In the alternative, R.K. and M.K. expressed a desire to have the bankruptcy petition "thrown out." They sent a second letter to the trustee indicating that they had been unable to reach either Attorney Merriam or the trustee to work out a solution to their problem.

¶ 27.   When R.K. and M.K. apparently still did not receive any response, they wrote to the bankruptcy administrator, explaining that they had been unable to communicate with Attorney Merriam. They indicated they would like to terminate the bankruptcy proceeding and inquired what the next step should be.

¶ 28.   On June 9, 2008, R.K. and M.K. filed a grievance against Attorney Merriam. They asserted that for the preceding six months they had believed Attorney Merriam was working on a solution for his mistake in filing the bankruptcy petition when he had, but Attorney Merriam had done nothing and had abandoned them.

¶ 29.   An OLR investigator spoke with Attorney Merriam about the situation on July 8, 2008. Attorney Merriam stated he had been waiting for all of the creditors to submit their claims before he would speak with the trustee and offer to have R.K. and M.K. pay 50 percent of the claims. He acknowledged that he had made a mistake in filing the bankruptcy petition during a time when the transfer could be voided in bankruptcy.

¶ 30.   In a written response to the grievance, Attorney Merriam admitted that all of the allegations by R.K. and M.K. were true. He again stated that his behavior had been due, in part, to his depression. He stated he was seeking medical help for the depression.

¶ 31.   Attorney Merriam subsequently wrote to R.K. and M.K. and apologized for his conduct. He said he could no longer represent them because of personal reasons. He did not offer to refund any of the fees they had paid. After he subsequently received the OLR's investigative report, which found that Attorney Merriam had failed to refund an unearned advance fee, he did send a $1,000 refund check to them.

¶ 32. The stipulation sets forth four counts of misconduct related to the representation of R.K. and M.K. Attorney Merriam's failure to determine the effect that a bankruptcy filing would have on the transfer of the remainder interest in their home and his failure to take any steps to address this problem after the filing constituted a failure to provide competent representation, in violation of SCR 20:1.1.[10] Attorney Merriam's failure to communicate with the trustee about the transfer issue and to take any steps that furthered his representation of R.K. and M.K. after the initial meeting of creditors on December 20, 2007, until he withdrew on September 25, 2008, constituted a failure to act with reasonable diligence and promptness, in violation of SCR 20:1.3. Attorney Merriam's failure to consult with R.K. and M.K. about the appropriate strategy for reaching their objectives and to explain the options available to them violated SCR 20:1.4(a)(2) and SCR 20:1.4(b). Further, his general failure to respond to R.K.'s and M.K.'s numerous telephone calls violated SCR 20:1.4(a)(4). Finally, Attorney Merriam's abandonment of his representation of R.K. and M.K. without taking any steps to protect their interests and his failure to refund in a timely manner a fee that had not been earned violated SCR 20:1.16(d).[11]

---

[10] SCR 20:1.1 says, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[11] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to

¶ 33. The stipulation provides that, as discipline for the misconduct described above, Attorney Merriam agrees with the OLR's request for a 90–day suspension of his license to practice law in this state. The stipulation further provides for conditions to be placed on Attorney Merriam's license. First, Attorney Merriam agrees that for a period of two years he will provide to the OLR quarterly certifications from his treating health care provider that he is in compliance with all treatment recommendations for his depression. Second, Attorney Merriam agrees that he will join the State Bar of Wisconsin's Practice411 practice management electronic list, that he will provide to the OLR written confirmation that he has registered to receive Practice411, and that for a period of two years he will file with the OLR quarterly written reports regarding his participation in the Practice411 service.

¶ 34. In the stipulation, Attorney Merriam verifies that he understands the allegations against him, that he understands and assents to the level of discipline sought by the OLR, that he understands the ramifications of that discipline, and that he understands his rights to consult with counsel and to contest the allegations in the complaint against him. Attorney Merriam further states that he has entered the stipulation knowingly and voluntarily and admits that he engaged in the misconduct described above.

¶ 35. The OLR has submitted a memorandum in support of the stipulation, which cites a number of disciplinary cases in support of a 90–day suspension of

which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Attorney Merriam's license to practice law in Wisconsin. *See, e.g., In re Disciplinary Proceedings Against Boyd,* 2008 WI 103, 314 Wis. 2d 14, 752 N.W.2d 882; *In re Disciplinary Proceedings Against Woods,* 2008 WI 79, 311 Wis. 2d 213, 751 N.W.2d 840; *In re Disciplinary Proceedings Against Hahnfeld,* 2007 WI 123, 305 Wis. 2d 48, 739 N.W.2d 280; *In re Disciplinary Proceedings Against Mauch,* 2007 WI 109, 304 Wis. 2d 541, 736 N.W.2d 141; *In re Disciplinary Proceedings Against Trewin,* 2004 WI 116, 275 Wis. 2d 116, 684 N.W.2d 121.

¶ 36. The OLR's memorandum also discusses a number of aggravating and mitigating factors. As mitigation, the OLR notes that Attorney Merriam suffered from depression during the relevant time periods, but he is now obtaining treatment for that condition. On the aggravating side, however, the OLR points to the fact that Attorney Merriam engaged in dishonesty by preparing and filing false documents with a bankruptcy court, that his failure to reaffirm the automobile loan for D.H. caused actual injury to her, that Attorney Merriam already has previously received two public and two private reprimands, and that the current matter involves multiple clients and a significant number of rule violations.

¶ 37. After fully reviewing the matter, we accept the stipulation and adopt the stipulated facts and the legal conclusions of misconduct. We also conclude that a 90–day suspension of Attorney Merriam's license to practice law in this state is an appropriate level of discipline. In particular, we believe that this level of discipline is supported by the 90–day suspension imposed in the *Mauch* disciplinary proceeding. 304 Wis. 2d 541, ¶ 29. In that case, Attorney Mauch pled no contest to ten counts of misconduct. He acknowledged that he

had failed to act with reasonable diligence in two cases for the same client. In the first case, Attorney Mauch's lack of diligence led to the action being dismissed. In the second case, without consulting with his client, Attorney Mauch stipulated to the dismissal of his client's claims against one defendant and he failed to oppose a motion to dismiss by another defendant. His lack of diligence in this instance led to a cost judgment being entered against his client without the client's knowledge. Like Attorney Merriam, Attorney Mauch then engaged in dishonesty to cover up his lack of diligence, falsely telling his client that he had settled the case for $60,000 and even making some "settlement" payments to the client out of his personal funds. Attorney Mauch also failed to submit requested information to the OLR and then provided documents that attempted to mislead the OLR. Attorney Mauch's misconduct, although not precisely the same as Attorney Merriam's, is sufficiently similar to support the imposition of a 90–day license suspension on Attorney Merriam.

¶ 38.   We also accept the stipulated conditions to be placed on Attorney Merriam's license. They provide protection for the public and ensure that Attorney Merriam is receiving the necessary treatment and support so that he can avoid a repetition of his misconduct.

¶ 39.   IT IS ORDERED that the license of David G. Merriam to practice law in Wisconsin is suspended for a period of 90 days, effective as of May 3, 2010.

¶ 40.   IT IS FURTHER ORDERED that for a period of two years beginning on the effective date of the license suspension identified in the preceding paragraph, David G. Merriam shall provide to the OLR quarterly written certifications from his treating health care provider that he is in compliance with all treatment recommendations for his depression.

652

¶ 41. IT IS FURTHER ORDERED that prior to the effective date of the license suspension identified above, David G. Merriam shall register to join the State Bar of Wisconsin's Practice411 practice management service and shall provide written confirmation of his registration for Practice411 to the Office of Lawyer Regulation.

¶ 42. IT IS FURTHER ORDERED that for a period of two years beginning on the effective date of the license suspension identified above, Attorney Merriam shall provide to the Office of Lawyer Regulation quarterly written reports explaining his participation in the Practice411 service.

¶ 43. IT IS FURTHER ORDERED that David G. Merriam comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.