**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 15, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2085**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020TP6

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.M.J., A PERSON UNDER THE AGE OF 18:

COLUMBIA COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

S.A.J.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Columbia County: W. ANDREW VOIGT, Judge. *Affirmed.*

¶1 TAYLOR, J.[1] S.A.J. appeals an order terminating her parental rights to her daughter K.M.J. S.A.J. pled no contest at the grounds phase of the involuntary termination of parental rights proceedings. The circuit court subsequently determined at the dispositional phase that termination was in K.M.J.'s best interests. S.A.J. argues that she should be permitted to withdraw her no-contest plea because (1) the court failed to make an adequate inquiry into her request for a new attorney, and (2) her trial counsel was ineffective, primarily due to trial counsel's alleged failure to obtain and review relevant discovery and adequately prepare for trial. For the reasons below, I affirm.

## BACKGROUND

¶2 In 2018, Columbia County Department of Health and Human Services (the "Department") filed a child in need of protection ("CHIPS") petition on behalf of S.A.J.'s fetus based on alleged drug use by S.A.J. *See* WIS. STAT. § 48.133. In June 2018, S.A.J. gave birth to her daughter K.M.J. According to the Department's allegations, S.A.J. and K.M.J. both tested positive for cocaine after K.M.J.'s birth. K.M.J.'s father, J.K., was in treatment for opioid addiction at that time and was unavailable to parent. Upon release from the hospital, K.M.J. was placed in a foster home.

¶3 In November 2018, a CHIPS dispositional order was entered maintaining K.M.J.'s foster placement and setting conditions that S.A.J. and J.K. were required to meet in order to obtain placement. In August 2019, S.A.J.'s probation was revoked and she began serving a prison term.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

¶4 In July 2020, the Department filed a petition seeking termination of S.A.J.'s and J.K.'s parental rights to K.M.J. Involuntary termination of parental rights ("TPR") cases follow a "two-part statutory procedure." ***Steven V. v. Kelley H.***, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. "In the first, or 'grounds' phase," the petitioner must prove that "one or more of the statutorily enumerated grounds for termination of parental rights exist." ***Id.***; WIS. STAT. § 48.31(1). If the petitioner proves that grounds exist, "the court shall find the parent unfit," WIS. STAT. § 48.424(4), and proceed to the second, or "dispositional" phase, in which the court decides whether it is in the best interests of the child that the parent's rights be terminated, ***Steven V.***, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2). As grounds for termination of S.A.J.'s parental rights, the Department alleged that K.M.J. had a continuing need of protection or services under WIS. STAT. § 48.415(2)(a) and that S.A.J. failed to assume parental responsibility under § 48.415(6).

¶5 In August 2020, the circuit court appointed counsel for S.A.J. in the TPR proceedings. *See* WIS. STAT. § 48.23(2) (setting forth a statutory right to counsel for parents in TPR proceedings). Proceedings were delayed for reasons including complications from the COVID-19 pandemic and difficulties obtaining a state public defender to represent J.K. In May 2021, the court scheduled a jury trial to begin on November 16, 2021 regarding whether grounds for termination existed.

¶6 On October 5, 2021, S.A.J.—who at that time was residing in a treatment facility—filed a letter pro se with the circuit court requesting that her appointed counsel be replaced. In this letter, S.A.J. represented that her trial counsel told her she "would lose [her] case due to [her] struggle[s] with substance

abuse," that trial counsel is "not on [her] side," and that trial counsel was often unresponsive to phone calls.

¶7    The circuit court addressed S.A.J.'s request at a hearing on October 21, 2021.  The court asked S.A.J. whether she still had the same concerns, and S.A.J. confirmed that she did.  S.A.J. also said that her trial counsel had told her on a phone call that she is "not here to represent me," which the court found not credible.  The court expressed concerns about appointing new counsel, saying that it had "no reason to believe" that S.A.J.'s trial counsel was not competent, and that granting the request would significantly delay the proceedings, including the grounds trial, and be contrary to K.M.J.'s interest in permanency.  As a result, the court said that it was "seriously considering … simply denying the request."

¶8    S.A.J. then spoke off the record and privately with her trial counsel. After proceedings resumed, trial counsel said that S.A.J. was now "more accepting of me representing her."  The circuit court asked S.A.J. if there was anything "particularly inaccurate" about trial counsel's representation, and S.A.J. said, "No. I guess I'm good, whatever."  The court said that "it appears at least for the moment we have resolved the representation issues."

¶9    On November 8, 2021, S.A.J. moved for a continuance of the grounds trial because she was currently in a substance abuse treatment program and believed the trial would disrupt her treatment progress.  The next day, the court held a hearing on S.A.J.'s continuance request.  S.A.J.'s trial counsel appeared on S.A.J.'s behalf and represented that S.A.J. was not at that time "emotionally prepared for the trial."  The court denied S.A.J.'s request.

¶10    On November 16, 2021, which was scheduled to be the first day of trial, S.A.J. pled no contest to one of two alleged grounds for termination, that

4

K.M.J. was in continuing need of protection or services under WIS. STAT. § 48.415(2)(a). During the plea colloquy, S.A.J. testified that she was satisfied with trial counsel's representation, and that her plea was part of a "negotiated agreement" to delay the ensuing dispositional hearing until after S.A.J. finished her treatment program so she could be "better equipped" for that hearing. Based on S.A.J.'s plea, the circuit court found S.A.J. to be unfit, and per S.A.J.'s request, found good cause to continue the dispositional hearing beyond the 45-day statutory deadline.[2]

¶11    The circuit court held the dispositional hearing in May 2022. At the hearing, the court determined that termination was in K.M.J.'s best interests and entered an order terminating S.A.J.'s parental rights.[3]

¶12    In January 2023, S.A.J. moved for postdisposition relief, seeking to withdraw her plea of no contest to grounds for termination. S.A.J. argued that she should be permitted to withdraw her plea because (1) the circuit court failed to conduct an adequate inquiry into S.A.J.'s request for new counsel, and (2) S.A.J.'s trial counsel was ineffective because trial counsel failed to adequately prepare for the grounds trial, leading S.A.J. to plead no contest.

¶13    The circuit court held an evidentiary hearing on S.A.J.'s postdisposition motion, during which S.A.J. and S.A.J.'s trial counsel testified. S.A.J. testified that she asked for new trial counsel because trial counsel was

---

[2] The dispositional hearing in a TPR proceeding must generally be held within 45 days after a finding of unfitness. WIS. STAT. § 48.424(4). However, continuances may be granted "upon a showing of good cause." WIS. STAT. § 48.315(2).

[3] J.K. also pled no contest to grounds, and his parental rights were also terminated after the disposition hearing.

"labeling" rather than "defending" her. S.A.J. also testified that she pled no contest because trial counsel told her that if she "stipulated to grounds," she would get additional visits with her daughter.

¶14 Trial counsel testified that she had handled "hundreds" of TPR cases, and it was not unusual for her clients in those cases to become angry and frustrated when she explained the possible outcomes of the TPR process. Trial counsel believed that S.A.J. "didn't really have a strong defense" to present at the grounds trial "other than she has a right to parent," but believed that S.A.J. had better odds at prevailing at the disposition hearing in an argument that termination was not in K.M.J.'s best interest.

¶15 In preparing for the grounds trial, trial counsel obtained via discovery case notes kept by the Department's social workers, up through January 2020. Following the parties, I refer to these notes as "eWiSACWIS" notes, an acronym denoting the "electronic Wisconsin Statewide Automated Child Welfare Information System," where child welfare workers maintain case information. *See eWiSACWIS Web-Based Modules*, UNIV. OF WISCONSIN-MADISON, https://wcwpds.wisc.edu/web-based-courses/ewisacwis-web-based-modules (last visited February 9, 2024). Trial counsel testified that eWiSACWIS notes have limited value because much of the information in them is cumulative or irrelevant. According to trial counsel, she did not seek eWiSACWIS notes after January 2020 because notes after the filing of the TPR petition would not have been relevant. However, as noted above, the TPR petition was actually filed months later, in July 2020.

¶16 In post-hearing briefing, S.A.J. argued that her trial counsel was deficient for, among other reasons, failing to obtain and review eWiSACWIS

notes. S.A.J. submitted to the circuit court the post-January 2020 eWiSACWIS notes that trial counsel did not obtain, arguing that these notes show "areas of weakness" in the Department's case and could have supported defenses against the alleged grounds for termination.

¶17 The circuit court denied S.A.J.'s postdisposition motion. As to S.A.J.'s request for new counsel, the court determined that S.A.J. had agreed to withdraw that request or at least postpone a ruling. As to S.A.J.'s ineffective assistance of counsel claim, the circuit court said that trial counsel's failure to obtain the eWiSACWIS notes "might be" deficient, but S.A.J. had not shown any connection between trial counsel's allegedly deficient performance and S.A.J.'s "choice to plead instead of going to trial." S.A.J. appeals. I reference additional facts as necessary below.

## DISCUSSION AND LEGAL PRINCIPLES

¶18 S.A.J. contends that the circuit court erroneously denied her postdisposition motion to withdraw her no-contest plea because the court failed to conduct an adequate inquiry into her request for new counsel and erroneously determined that her trial counsel was not ineffective.

### I. Applicable Plea Withdrawal Framework

¶19 There are few published Wisconsin cases that address the proper legal framework to apply when evaluating a parent's motion to withdraw a grounds plea in a TPR proceeding. In at least one context, precedent dictates that criminal plea withdrawal procedures apply. Specifically, when a parent in a TPR proceeding seeks to withdraw a plea due to an allegedly inadequate plea colloquy, the court applies the framework established in *State v. Bangert*, 131 Wis. 2d 246,

389 N.W.2d 12 (1986). *See Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, ¶¶5-6, 314 Wis. 2d 493, 762 N.W.2d 122. In *Bangert*, our supreme court set forth the required plea colloquy in which a circuit court must engage to ensure that a defendant's plea was entered knowingly, voluntarily, and intelligently. *Bangert*, 131 Wis. 2d at 267-72. However, there appear to be no published cases addressing the proper framework to apply where, as here, a parent in a TPR proceeding seeks to withdraw a plea for reasons other than a *Bangert* violation.

¶20    The parties appear to agree that S.A.J.'s claims on appeal should be analyzed under criminal plea withdrawal law. Although not cited by the parties, many unpublished opinions of this court apply criminal plea withdrawal law when a parent in a TPR case seeks to withdraw a plea based on an ineffective assistance of counsel claim, which is at issue here.[4]

¶21    Indeed, criminal law provides a particularly apt analogy to plea withdrawal claims based on ineffective assistance of counsel in the TPR context. For example, S.A.J.'s claims relate to her right to be represented by effective counsel, which, although statutory rather than constitutional, is similar to a criminal defendant's Sixth Amendment constitutional right to effective assistance of counsel.[5] *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

---

[4] *See, e.g.*, *Kenosha Cnty. DHS v. M.M.B.*, Nos. 2019AP1776 and 2019AP1777, unpublished slip op. ¶11 (WI App Jan. 22, 2020); *Kenosha Cnty. DHS v. A.C.*, No. 2015AP151, unpublished slip op. ¶9 (WI App July 23, 2015); *Dane Cnty. DHS v. Jayvonne S.*, No. 2008AP2466, unpublished slip op. ¶11 (WI App Mar. 12, 2009).

[5] *See Oneida Cnty. DSS v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652 (a parent's right to counsel in TPR proceedings under WIS. STAT. § 48.23(2) includes a right to effective assistance of counsel, and a parent's ineffective assistance of counsel claim is analyzed under the test articulated in the criminal case of *Strickland v. Washington*, 466 U.S. 668 (1984)).

¶22   In the criminal context, to withdraw a plea before sentencing, a defendant need only show that there is a "fair and just reason" to allow plea withdrawal, so long as the State is not substantially prejudiced by the withdrawal. *Libke v. State*, 60 Wis. 2d 121, 125, 129, 208 N.W.2d 331 (1973). However, "a guilty or no contest plea generally waives all nonjurisdictional defects, including constitutional claims."[6] *State v. Multaler*, 2002 WI 35, ¶54, 252 Wis. 2d 54, 643 N.W.2d 437. As a result, if a defendant seeks to withdraw a plea after sentencing, the defendant must, under most circumstances, meet a higher burden and prove by clear and convincing evidence that plea withdrawal "is required to correct a 'manifest injustice.'" *State v. Abbott*, 2020 WI App 25, ¶39, 392 Wis. 2d 232, 944 N.W.2d 8 (quoting *Hatcher v. State*, 83 Wis. 2d 559, 564, 266 N.W.2d 320 (1978)). The manifest injustice standard requires a "showing of a serious flaw in the fundamental integrity of the plea," *State v. Nawrocke*, 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995), and "sets a high bar for overcoming waiver," *Abbott*, 392 Wis. 2d 232, ¶39. The policy reasons for requiring a defendant to meet this high burden for plea withdrawal after sentencing include the State's interest in the finality of convictions and to make it more difficult for defendants who are disappointed in their sentences to pursue plea withdrawal as a result. *Nawrocke*, 193 Wis. 2d at 379, 380-81, 534 N.W.2d 624 (Ct. App. 1995) (citation omitted).

¶23   Wisconsin law recognizes several ways in which a defendant can meet the manifest injustice standard. *See State v. Cain*, 2012 WI 68, ¶26, 342 Wis. 2d 1, 816 N.W.2d 177. For example, a defendant can show a manifest

---

[6] A no-contest plea is "the functional equivalent of a plea of guilty." *State v. Higgs*, 230 Wis. 2d 1, 9, 601 N.W.2d 653 (Ct. App. 1999).

9

injustice by establishing a "***Bangert*** violation"; that is, by showing that the plea was not knowing, intelligent, and voluntary due to the circuit court's failure to conduct an adequate plea colloquy. *See **State v. Taylor***, 2013 WI 34, ¶32, 347 Wis. 2d 30, 829 N.W.2d 482 (citing ***Bangert***, 131 Wis. 2d at 274). Another way a defendant can show a manifest injustice is to show that he or she was "denied the effective assistance of counsel." ***State v. Bentley***, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).

¶24 Here, S.A.J. did not move to withdraw her plea until after disposition—that is, until after the circuit court found that termination was in K.M.J.'s best interests and terminated S.A.J.'s parental rights. We have previously stated in an unpublished opinion that, in a TPR proceeding, a parent's request to withdraw a plea after disposition is analogous to a criminal defendant's request to withdraw a plea after sentencing, and that the parent is required to meet the manifest injustice standard. *See **Dane Cnty. DHS v. Jayvonne S.***, No. 2008AP2466, unpublished slip op. ¶11 (WI App Mar. 12, 2009).

¶25 S.A.J. asserts that "parents should be allowed to withdraw their pleas only" if they meet the manifest injustice standard, and the Department and K.M.J.'s guardian ad litem (GAL) do not dispute this premise.[7] Requiring parents to meet the manifest injustice standard in order to withdraw a plea after a TPR disposition appears appropriate in light of the consequential interests at stake. A TPR proceeding involves the competing interests "of the biological parent in his or her relationship with the child, those of the child in permanence and stability in familial relationships, and those of the State in securing efficient and speedy

---

[7] This court received a brief opposing S.A.J.'s appeal from K.M.J.'s guardian ad litem.

resolution of termination of parental rights proceedings." ***State v. Bobby G.***, 2007 WI 77, ¶60, 301 Wis. 2d 531, 734 N.W.2d 81. When a circuit court determines at disposition that termination is in the child's best interests and terminates the parent's parental rights, the adoption process can then commence. *See* WIS. STAT. § 48.81 (a child generally cannot be adopted until parental rights are terminated). Particularly in light of a child's compelling interest in permanence and stability at that point, it appears appropriate to require parents to meet the manifest injustice standard to withdraw a plea after disposition.

¶26 Accordingly, I apply the manifest injustice standard here, and now turn to S.A.J.'s arguments.

### II. Request for New Counsel

¶27 "Whether counsel should be relieved and a new attorney appointed in his or her place is a matter within the [circuit] court's discretion." ***State v. Lomax***, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). "A circuit court properly exercises its discretion when it employs a rational thought process based on an examination of the facts and an application of the correct standard of law." ***Sheboygan Cnty. HHS v. Julie A.B.***, 2002 WI 95, ¶43, 255 Wis. 2d 170, 648 N.W.2d 402. In evaluating a court's decision to deny a request for new counsel, a reviewing court considers factors such as "(1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." ***Lomax***, 146 Wis. 2d at 359.

¶28 S.A.J. argues that the circuit court erroneously exercised its discretion and she should be permitted to withdraw her plea because, at the

11

October 2021 hearing on S.A.J.'s request for new counsel, the court failed to adequately inquire into her reasons for seeking new counsel.[8]  Notably, S.A.J. does not expressly argue that the court should have *granted* her request—she argues only that the court erroneously discouraged her from expressing her complaints and instead should have inquired further into them.  S.A.J.'s argument fails for several reasons.

¶29    First, S.A.J. does not explain why, if the circuit court did in fact fail to conduct an adequate inquiry, this constitutes a manifest injustice such that plea withdrawal is required.  As noted above, under the criminal plea withdrawal framework (which S.A.J. agrees applies here), a party may only withdraw a plea upon showing by clear and convincing evidence that plea withdrawal is required to correct a manifest injustice.  *Abbott*, 392 Wis. 2d 232, ¶39.  S.A.J. makes no argument that the court's purported failure to conduct an adequate inquiry into her reasons for requesting new counsel meets the manifest injustice standard, nor does S.A.J. cite any criminal case in which a defendant was permitted to withdraw a plea based on the court's failure to conduct such an inquiry.[9]  Accordingly, S.A.J.'s claim fails because she develops no argument that the error she has alleged entitles her to the remedy, plea withdrawal, that she seeks.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court need not address arguments not developed or not supported by citation to authority).

---

[8] S.A.J.'s brief does not expressly specify what relief she seeks for this purported error. Because the only relief she seeks in this appeal is plea withdrawal, I presume that she contends that this error entitles her to withdraw her no-contest plea.

[9] The two cases cited by S.A.J. in support of her argument that the circuit court failed to conduct an adequate inquiry, *State v. Lomax*, 146 Wis. 2d 356, 432 N.W.2d 89 (1988), and *State v. Jones*, 2007 WI App 248, 306 Wis. 2d 340, 742 N.W.2d 341, do not involve plea withdrawal.

¶30    Second, S.A.J.'s argument overlooks the fact that she *withdrew* her request for new counsel. As noted above, at the October 2021 hearing, S.A.J.'s trial counsel represented that, after an off-the-record conversation with S.A.J., S.A.J. was now "more accepting" of trial counsel's representation, and S.A.J. confirmed that this was accurate. The circuit court stated that the matter appeared to be "resolved," though it acknowledged that S.A.J. might revisit the issue. S.A.J. did not do so until her postdispositional motion. If S.A.J. had not withdrawn her request after consulting with her trial counsel, the court might have conducted a more thorough inquiry into the reasons for S.A.J.'s request.

¶31    Third, even if the circuit court's inquiry *was* inadequate, S.A.J. has already been granted the relief to which she was legally entitled. A defendant is not entitled to "the windfall of a new trial simply because the [circuit] court did not make a thorough inquiry into the defendant's reasons for the [new counsel] request." *Lomax*, 146 Wis. 2d at 364. Instead, the proper remedy is a postconviction hearing at which the issue is explored more thoroughly and the court determines whether the defendant was entitled to new counsel and should be granted a new trial. *See id.*; *see also* **State v. Jones**, 2007 WI App 248, ¶19, 306 Wis. 2d 340, 742 N.W.2d 341. Consistent with *Lomax*, the court held a postdisposition evidentiary hearing at which S.A.J. had the opportunity to explain her reasons for requesting new counsel. S.A.J. does not expressly argue that the court erred by determining, after this hearing, that she was not entitled to new counsel.

¶32    Moreover, to the extent that S.A.J. means to make such an argument, the record does not show that the circuit court erroneously exercised its discretion by determining that S.A.J. was not entitled to new counsel. *Lomax* requires consideration of "the timeliness of the motion." *Lomax*, 146 Wis. 2d at 359.

13

S.A.J.'s trial counsel was appointed in August 2020, and S.A.J. did not request a new attorney until more than a year later, in October 2021, the month before the grounds trial was set to begin. The court said that granting S.A.J.'s request would require delaying the grounds trial (which had already been significantly delayed for other reasons) by many more months, contrary to the child's interest in permanency. S.A.J. offered no explanation, either during the TPR proceedings or at the postdisposition evidentiary hearing, for the lateness of her request.

¶33 *Lomax* also requires consideration of "whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *Id.* The record does not reflect such a conflict. S.A.J. argues that, because trial counsel had not reviewed the eWiSACWIS notes, trial counsel was not able to "communicate adequately with her client about her defense." However, trial counsel testified that the information contained in the notes was generally cumulative or irrelevant, and she believed that it was preferable to get this information from other sources, such as from S.A.J. directly.[10] S.A.J. does not persuade me that trial counsel's failure to review these notes created "a total lack of communication that prevented an adequate defense." *Id.*

¶34 S.A.J.'s other complaints likewise do not show a conflict so great that it prevented an adequate defense. When S.A.J. requested new counsel, S.A.J.

---

[10] S.A.J. asserts that trial counsel's failure to review the eWiSACWIS notes "meant she was wrong about important aspects" of the case, such as S.A.J.'s progress in drug court and whether S.A.J. regularly contacted K.M.J.'s foster parent. Assuming that trial counsel was in fact wrong about these details, however, S.A.J. does not explain why trial counsel could not have gotten the correct information from sources other than the eWiSACWIS notes.

alleged that trial counsel said she was "not here to represent" S.A.J. The circuit court found this allegation not credible. Rather, the court remarked that it appeared to stem from the fact that trial counsel was appointed to represent S.A.J. in the TPR proceeding, but not in the underlying CHIPS proceeding. Accordingly, S.A.J. may have been confused about the limited scope of trial counsel's representation. S.A.J. also complains that trial counsel disagreed with S.A.J.'s suggestion that she interview staff members at S.A.J.'s treatment center to determine whether they would be helpful to call at trial. However, trial counsel testified that she *did* frequently speak with treatment center staff, and had determined that calling staff at trial would do more harm than good. S.A.J. does not contend that trial counsel's assessment was incorrect, or explain how this disagreement as to trial strategy created a conflict so great it prevented an adequate defense.

¶35 S.A.J.'s other primary concern appears to be that trial counsel repeatedly brought up the possibility of voluntary termination, even though S.A.J. had told trial counsel that she was not interested in this option. Trial counsel testified that it was her standard practice to repeatedly explain all possible methods of resolving a case—including going to trial and voluntary termination—so that clients understood those options. The fact that trial counsel explained options to S.A.J. that she did not want to pursue does not mean that there was a conflict between S.A.J. and trial counsel—in fact, an attorney has an ethical obligation to explain a client's potential options. *See **OLR v. Merriam***, 2010 WI 21, ¶32, 323 Wis. 2d 634, 780 N.W.2d 150.

¶36 In sum, S.A.J. has not shown that the circuit court erroneously exercised its discretion in connection with her request for a new attorney, or that any error would entitle her to plea withdrawal.

### III. Ineffective Assistance of Counsel

¶37    In the criminal context, to prevail on an ineffective assistance of counsel claim, a defendant must prove both "that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to adequately show one prong of the *Strickland* test, we need not address the second." *State v. Elm*, 201 Wis. 2d 452, 462, 549 N.W.2d 471 (Ct. App. 1996). To satisfy the prejudice prong in the context of a postconviction motion to withdraw a guilty plea, the defendant must show "'that there is a reasonable probability that, but for the counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.'" *State v. Bentley*, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

¶38    A defendant must make more than a "conclusory allegation that he or she would not have pled but would have gone to trial." *State v. Jeninga*, 2019 WI App 14, ¶14, 386 Wis. 2d 336, 925 N.W.2d 574 (citing *State v. Dillard*, 2014 WI 123, ¶99, 358 Wis. 2d 543, 859 N.W.2d 44). When the circuit court holds an evidentiary hearing on an ineffective assistance of counsel claim seeking plea withdrawal, the defendant must "provide the circuit court with objective facts" showing the defendant's "subjective decision-making about entering the plea." *Jeninga*, 386 Wis. 2d 336, ¶21.

¶39    In the criminal context, "[a]n ineffective assistance of counsel claim presents a question of constitutional fact." *Id.*, ¶13. "We uphold the circuit court's findings of fact unless those are clearly erroneous." *Id.* We "review de novo whether those facts establish constitutionally deficient performance," and

16

"whether, under the totality of the circumstances, there is a reasonable probability" that, but for counsel's deficient performance, the defendant would not have pled but instead would have gone to trial. *Id.*

¶40    S.A.J. argues that her trial counsel was deficient for, among other things, failing to obtain and review the eWiSACWIS notes, which she contends could have been used to prepare defenses to present at the grounds trial. The circuit court determined that S.A.J. failed to demonstrate that she was prejudiced by this alleged deficiency.

¶41    In addressing S.A.J.'s ineffective assistance of counsel claim, I assume without deciding that trial counsel's performance was deficient. But I conclude that S.A.J. has failed to show that she was prejudiced by any deficiency. Although I therefore need not determine whether trial counsel's performance was deficient, I briefly discuss the alleged deficient performance in order to better explain why S.A.J. has failed to show that these deficiencies prejudiced her.

¶42    S.A.J.'s ineffective assistance of counsel claim focuses on purported deficiencies by trial counsel in preparing for the grounds hearing. As noted above, the Department alleged two grounds for termination:  that K.M.J. was in continuing need of protection or services under WIS. STAT. § 48.415(2)(a) ("continuing CHIPS"), and failure to assume parental responsibility under § 48.415(6). The Department needed only to prove one ground to prevail. *See Steven V.*, 271 Wis. 2d 1, ¶24. S.A.J. pled no contest to the continuing CHIPS ground. Generally, to prove the continuing CHIPS ground under § 48.415(2)(a), the petitioner must prove that:  (1) the child has been placed outside the home for a cumulative total of six months or longer pursuant to a court order containing the termination of parental rights notice required by law; (2) the child welfare agency

17

(here, the Department) has made a reasonable effort to provide court-ordered services; and (3) the parent has failed to meet the conditions established for the safe return of the child to the home. *See* § 48.415(2)(a); *see also* WIS JI—CHILDREN 324.

¶43     S.A.J. does not dispute that she had no defense to the first and third continuing CHIPS elements, but argues that trial counsel performed deficiently in not preparing a defense as to the second element, whether the Department made reasonable efforts to provide court-ordered services.  S.A.J. contends that, had trial counsel obtained and reviewed eWiSACWIS notes from January 2020 onward, trial counsel could have argued that the Department failed to make reasonable efforts to provide visits with K.M.J. while S.A.J. was incarcerated.

¶44     The fatal flaw in S.A.J.'s argument is that, as the circuit court recognized, the record is devoid of evidence connecting this allegedly deficient performance to S.A.J.'s decision to plead no contest to the continuing CHIPS ground.

¶45     In evaluating whether there was a reasonable probability that, but for counsel's deficient performance, a defendant would have gone to trial rather than plead no contest, the inquiry focuses on the defendant's "subjective decision-making about entering the plea." *Jeninga*, 386 Wis. 2d 336, ¶21.  The defendant cannot rely on postconviction counsel's assertions as to what the defendant would have done—this is "merely argument." *Id.*, ¶22.  Instead, the defendant must present evidence of the defendant's "own thinking and explanation of why he [or she] would not have pled and instead would have gone to trial." *Id.*

¶46     S.A.J.'s postdisposition counsel asserts that S.A.J. "would have gone to trial if she knew herself to have an attorney who was functioning as the counsel

guaranteed to her under Wisconsin law" and was "prepared to make a considered, informed defense." But postdisposition counsel's assertions do not suffice, and S.A.J. fails to support this assertion with citation to record evidence. S.A.J. never testified that, if she believed she had a better-prepared attorney, she would have gone to trial rather than plead no contest at the grounds phase.

¶47     Rather, as noted above, at the plea hearing itself, S.A.J. testified that her decision to plead was part of a "negotiated agreement" to delay the dispositional hearing until after S.A.J. would be out of her treatment program, so that she would be "better equipped" for the dispositional hearing. This comports with S.A.J.'s prior request to continue the grounds trial because she was "not emotionally prepared" for it, and also with trial counsel's testimony that she believed that S.A.J. had a better chance at prevailing at the disposition hearing. Later, at the postdisposition evidentiary hearing, S.A.J. testified that she pled no contest to grounds because trial counsel told her that if she "stipulated to grounds," she would get additional visits with her daughter. S.A.J. does not explain how either of these proffered subjective reasons relate to trial counsel's allegedly deficient performance, nor does she identify anything else in the record showing her "own thinking and explanation of why" she pled no contest. *See id.*

¶48     S.A.J. may intend to argue that, regardless of the lack of direct evidence showing she would have gone to trial had trial counsel been better prepared, her request for new counsel raises an inference to that effect. However, the circuit court found that S.A.J's request for new counsel was "about delay and not about concern about [trial counsel's] performance," noting that soon after S.A.J. made, and then withdrew, her request for new counsel, she sought a

continuance of the grounds trial. Further, at the subsequent plea hearing, S.A.J. testified that she was satisfied with trial counsel's representation.[11] In any event, S.A.J.'s burden is to meet the manifest injustice standard by "clear and convincing evidence." *Abbott*, 392 Wis. 2d 232, ¶39. S.A.J. does not explain how she could meet that burden by mere inference, particularly in light of testimony that she pled no contest for different reasons.

¶49 Finally, S.A.J. may intend to argue that, absent trial counsel's deficient performance, a reasonable person in her position would have gone to trial rather than plead no contest. However, even applying this objective standard, S.A.J. does not argue that any potential defense trial counsel deficiently failed to prepare was likely to prevail. *See Hill*, 474 U.S. at 59 (in evaluating whether there is a reasonability the defendant would have gone to trial rather than plead when alleged deficiency is a failure to advise the defendant of a potential defense, "the resolution of the 'prejudice' inquiry will depend largely on whether the … defense likely would have succeeded at trial").

¶50 As noted above, S.A.J. primarily contends that trial counsel should have prepared a defense that the Department failed to make reasonable efforts to facilitate visits with S.A.J. while she was incarcerated.[12] However, the

---

[11] S.A.J. argues that the circuit court's finding that S.A.J.'s request was a delay tactic is clearly erroneous. She points to various alleged deficiencies of trial counsel, including S.A.J.'s failure to review the eWiSACWIS notes, and asserts that S.A.J.'s complaints were genuine. However, a factual finding is "clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Lowe's Home Ctrs., LLC v. City of Delavan*, 2023 WI 8, ¶25, 405 Wis. 2d 616, 985 N.W.2d 69. As noted above, there is record support for the circuit court's finding, including testimony by S.A.J. that she was satisfied with trial counsel's performance. S.A.J. does not persuade me that the court's finding is against the clear preponderance of the evidence.

[12] S.A.J. also argues that trial counsel was deficient for neglecting to use the eWiSACWIS notes to prepare a defense to the other alleged ground for termination, failure to

(continued)

eWiSACWIS notes state that the Department initially denied visits with K.M.J. upon S.A.J.'s incarceration because she revoked certain required releases, contrary to the conditions in the CHIPS dispositional order. S.A.J. signed the necessary releases in February 2020, and S.A.J. began having video visits in March 2020. S.A.J. contends that the Department could have done more to facilitate in-person visits in prison after that time. However, the COVID-19 pandemic began in March 2020, and S.A.J. does not explain why it would have been reasonable or allowable to bring a young child into a prison during the beginning of the pandemic. Additionally, the eWiSACWIS notes state that the Department was later hesitant to resume in-person visits because S.A.J. had repeatedly tested positive for controlled substances, including methamphetamine, had not consistently attended video visits, and had not consistently communicated with her social worker. In the brief submitted by the GAL, the GAL argues that it is unlikely that a jury, being informed of "the entire picture," would have found that the Department failed to make reasonable efforts to provide court-ordered services. S.A.J. does not respond to this argument, and I deem it conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (a party's failure to refute an argument may be taken as a concession).

¶51 In sum, the record shows that S.A.J. pled no contest to the continuing CHIPS ground because she was not emotionally prepared for trial at

---

assume parental responsibility under WIS. STAT. § 48.415(6). I do not address the likelihood of success of any defense to this ground, both because S.A.J. does not argue that any such defense was likely to succeed, and because the Department only needed to prove the continuing CHIPS ground for termination to prevail at the grounds trial. *See Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.

that time, because trial counsel informed her that she did not have a strong grounds defense (which S.A.J. concedes is an accurate assessment), and because the parties negotiated an agreement to give S.A.J. additional time to prepare for the ensuing disposition hearing, where, according to trial counsel, S.A.J. would have a stronger defense.[13] S.A.J. does not identify any evidence linking trial counsel's alleged deficiencies to her decision to plead no contest. Therefore, I conclude that S.A.J. has not demonstrated that she was prejudiced by her trial counsel's alleged deficiencies, and her ineffective assistance of counsel claim fails. As a result, I conclude that S.A.J. has not demonstrated by "clear and convincing" evidence that she should be allowed to draw her grounds plea to correct a "manifest injustice." *See Abbott*, 392 Wis. 2d 232, ¶39 (the defendant must prove by clear and convincing evidence that plea withdrawal "is required to correct a 'manifest injustice'" (quoting *Hatcher*, 83 Wis. 2d at 564)).

## CONCLUSION

¶52 For all these reasons, I affirm the order of the circuit court terminating S.A.J.'s parental rights to K.M.J.

---

[13] Although S.A.J. contends that trial counsel believed (and presumably told S.A.J.) that she had "no defense" to grounds "except 'she has a right to parent,'" this is not supported by the record. Trial counsel testified only that S.A.J. did not "have a *strong defense* other than she has a right to parent." (Emphasis added.) Trial counsel testified that she had prepared more specific defenses to raise at trial, including challenging the Department's efforts to provide court-ordered services based on questioning S.A.J.'s social worker.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.